ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

201? MAR -4  PM 4: 01

DEPUTY CLERK

|  |  |
|---|---|
| TRAVELHOST, INC., <br> a corporation <br><br> Plaintiff, <br><br> vs <br><br> TONYA FIGG, individually, and FIGG <br> PUBLISHING, INC., a corporation <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. **3-11CV-455-D** <br> )      47517 <br> ) <br> ) <br> ) <br> )   COMPLAINT <br> ) <br> ) |

## COMPLAINT

Plaintiff TRAVELHOST, Inc. ("TRAVELHOST"), by and through its counsel, for its Complaint against TONYA FIGG, individually, and Figg Publishing, Inc. (hereinafter collectively "Figg Defendants"), and all those acting in concert and conspiracy with them, both individually and collectively, alleges as follows:

### I. PARTIES

1.     TRAVELHOST is a Texas corporation with its principal office and place of business at 10701 Stemmons Frwy, Dallas, Texas 75220.  The name TRAVELHOST and the logo "TH" are registered trademarks belonging to TRAVELHOST.

2.     Figg Publishing, Inc. is a corporation existing under the laws of the State of Indiana with its principal place of business in Avon, Indiana.  Figg Publishing, Inc. may be served with process by serving its registered agent, Tonya Figg, 8103 E. Hwy 36 # 266, Avon, IN 46123.

3.      Tonya Figg is an individual resident of the State of Indiana, residing at 8103 E. Hwy 36 # 266, Avon, IN 46123 and who may be served with process at this address.

## II. JURISDICTION AND VENUE

4.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because this case involves a controversy between parties of diverse citizenship and the amount in controversy exceeds $75,000.

5.      Venue is proper in this District pursuant to the Forum Selection Clause contained in the contract Defendants entered into with TRAVELHOST. The contract specifically provides that "[v]enue over any disputes between the parties of this Agreement shall be solely and exclusively in Dallas, Texas, and any lawsuit between the parties to this Agreement shall be instituted and resolved solely and exclusively in a court of competent jurisdiction located in Dallas, Texas."

6.      Venue is also proper in this District under 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claim occurred in this District.

## III. NATURE OF THE ACTION

7.      This lawsuit arises out of a contract entered into between the parties whereby, *inter alia*, TRAVELHOST licensed to the Defendants the use of its trademarks, brand recognition and goodwill associated with its extensive and long-standing business operations in serving the needs of the traveler through TRAVELHOST Magazine and its family of other publications, online products and services. The Defendants took full advantage of all of the contractual rights and benefits granted by TRAVELHOST for over 1½ years, during which time, acting as the exclusive authorized representatives of

TRAVELHOST of South Central Indiana, they established distribution arrangements with local hotel properties, fostered relationships with local retailers/advertisers offering goods and services to travelers, and distributed 5 separate quarterly issues of the local edition of TRAVELHOST Magazine -- keeping 100% of all local advertising revenues.

8.      TRAVELHOST strictly lived up to each and every one of its contractual obligations.  In the early part of 2010, the Figg Defendants failed to submit a production packet for the January 10, 2010, quarterly issue of the South Central Indiana local edition, and, unbeknownst to TRAVELHOST, they commenced plans to launch a competitive publication.  Defendants were notified of their default under the terms of her agreement with TRAVELHOST, which they failed to cure, and, on March 4, 2010, TRAVELHOST provided notice of termination of the relationship. Shortly thereafter, they commenced distribution of the Spring 2010 issue of that competitive publication.  As soon as possible upon learning about the competitive publication, TRAVELHOST demanded that Defendants cease and desist their activities which were in direct violation of a contractual non-competition provision.  They refused.

9.      The actions of the Figg Defendants have resulted in the absence of a local edition of TRAVELHOST Magazine in the marketplace and concomitant monetary damages.  They also have caused irreparable harm to the TRAVELHOST brand and reputation within the local market, and, moreover, the mere presence in the market of Defendants' competitive publication (especially where, as here, run by the same individuals representing TRAVELHOST) will make it immeasurably more difficult and costly, if not impossible, for TRAVELHOST to re-establish goodwill in the local communities, to obtain distribution of the publication, to establish relationships with local

retailers/advertisers, etc.  Given those circumstances, it will be far more time-consuming and expensive to find new representatives willing to take on this challenge, not to mention the time and money required to be expended by TRAVELHOST to attempt to overcome the obstacles created by the Figg Defendants' competitive actions. TRAVELHOST has advertised the market availability since the termination of the parties' contractual relationship without success.

10.     In addition to their activities in direct violation of the contractual non-competition provision with TRAVELHOST, the Defendants also induced TRAVELHOST's Central Indiana local edition distributor (R & L Publications, Inc.) to breach the terms of its separate and independent contractual commitments to TRAVELHOST,  including violation of the terms of the non-competition provision.  The Figg Defendants launched a competitive publication in that market area, as well, engaging Ross Pethe (President of R & L Publications, Inc.) to act as associate publisher of that competitive publication.

## IV.  FACTUAL BACKGROUND

11.     Defendant Figg Publishing, Inc. entered into a Distributorship Agreement and an Optional Associate Publisher Agreement (collectively "Agreements") with TRAVELHOST effective April 14, 2008.  Pursuant to the Distributorship Agreement, Defendant Figg Publishing, Inc. agreed, *inter alia*, to purchase from TRAVELHOST and to accept delivery of not less than 7,500 copies of each quarterly issue of the South Central Indiana local edition of TRAVELHOST Magazine.  Defendant Figg Publishing, Inc. also agreed to use its best efforts to distribute the publication and to sell advertising

within his designated area, which consisted of the Bloomington/Columbus, Indiana metropolitan area (the "Designated Area").

12.     Contemporaneous with execution of the Distributorship Agreement, and as a condition precedent to TRAVELHOST's agreement thereto, Tonya Figg (President of Figg Publishing, Inc.) executed a Distributorship Agreement Addendum "A" warranting and representing, in pertinent part: a) that she owned in excess of 50% of the voting stock of the corporation; and b) that she agreed that the obligations under paragraph 9 of the Distributorship Agreement governing non-competition would be personally binding on her.  At all times pertinent, Tonya Figg was the only shareholder and officer of Figg Publishing, Inc., and she at all times actively operated and managed all activities of Figg Publishing, Inc. in connection with the rights and benefits granted by TRAVELHOST under the Agreements.

13.     Subsequent to execution of the respective Agreements, Defendant Figg traveled to TRAVELHOST's headquarters in Dallas to attend the multi-day BPS (Best Practices Seminar) classes on May 14, 2008.  At BPS, Defendant Figg received, among other information and materials: a) specific information relating to the layout of the Magazine and the proper manner of preparing and submitting a production packet; b) TRAVELHOST's confidential Production Manual; c) proprietary best practices gleaned from other distributors and associate publishers over the years; d) general sales guidance and tips; e) proprietary forms and information for use in connection with obtaining distribution and advertising business; and f) access to miscellaneous other proprietary information useful in connection with production of the aagazine, distribution of the Magazine, and the sale of advertising space in the magazine.  Information also was shared

regarding the TRAVELHOST existing web site and planned upgrades to the web site, a password was provided for obtaining access to the associate publisher's room containing various confidential and proprietary information not available to the general public, and instructions were provided for populating and modifying information on that portion of the web site dedicated to each distributor's applicable local market. In addition to TRAVELHOST Magazine, introduction was also provided to TRAVELHOST's various other products.

14.     Pursuant to the rights afforded under the Agreements, Defendants solicited local businesses (the "advertisers") to place advertisements in the South Central Indiana local edition of TRAVELHOST Magazine. Defendants also entered into distribution agreements with area hotels and motels, whereby the hotels and motels agreed to place issues of the local edition of TRAVELHOST Magazine in their guest rooms.

15.     Defendants distributed five quarterly issues of the South Central Indiana local edition of TRAVELHOST Magazine under the Agreements (selling advertising to local retailers and distributing the magazine in local hotels/motels and, perhaps, other distribution venues) since the inception of the relationship. During this period of time, Defendants received one hundred percent (100%) of all of the local advertising revenues generated through the local edition of the publication, and Defendants were able to establish relationships with local advertisers and hotels/motels doing business as TRAVELHOST of South Central Indiana taking advantage of the goodwill associated with the TRAVELHOST name. In addition, Defendants utilized the regional space afforded to them by TRAVELHOST under the Agreements to run ads for 12 months (retaining 100% of any and all advertising revenues derived from said ads), and they

utilized $56,250.00 of the $75,000.00 regional/national advertising space credits (keeping

100% of any and all advertising revenues generated from the ads placed).

16.     Paragraph 9 of the Distributorship Agreement expressly provides as

follows:

> "Distributor agrees that it will not, either directly or indirectly, engage or
> participate in a similar business or one competitive with Publisher, the
> Publication, any other authorized distributor of the Publication, or any other
> TRAVELHOST products within the Designated Area during the term of this
> Agreement or within two (2) years after termination of this Agreement."

17.     The Figg Defendants failed to purchase and distribute the January 10,

2010, issue of the local edition of the publication and, by letter of February 15, 2010, they

were notified of the default and afforded the opportunity to cure the default.  They failed

to cure the default and, by letter of March 4, 2010, TRAVELHOST provided notice of

termination of all rights under the Agreements.

18.     The Figg Defendants had, for some time prior to the termination, been

engaged in arranging for the publication of a new competitive magazine (and related

products) for distribution within the Designated Area in direct competition with

TRAVELHOST Magazine.   In the Spring of 2010, Tonya Figg began distribution of, and

the sale of advertising into, a new publication called "TRAVELIN" (hereafter

"Competitive Publication").

19.     Tonya Figg is listed as the publisher of the Competitive Publication, and

she is working with some of the same individuals as before for distribution, photography,

graphic design and advertising sales.   Many of the advertisers in the Competitive

Publication are identical, including, in a number of instances, the same advertisements. The Competitive Publication targets the same markets, readers and distribution channels.

20. The Figg Defendants set out upon a scheme to commence publishing the Competitive Publication as a replacement for TRAVELHOST of South Central Indiana. They arranged that the advertising contracts for TRAVELHOST of South Central Indiana would be taken over by the Competitive Publication as soon as they commenced distribution of the Competitive Publication, and they, and those acting in concert with them, advised the advertisers in TRAVELHOST Magazine that TRAVELHOST of South Central Indiana was "now" TRAVELIN, and that the advertisers ads would now be run in and billed by the Competitive Publication. Similarly, they advised many of the hotels/motels with distribution agreements with TRAVELHOST Magazine that the Competitive Publication was "replacing" TRAVELHOST. Since that time, Defendants have distributed the Competitive Publication to most, if not all, of the same hotels/motels/distribution outlets previously receiving TRAVELHOST Magazine relying upon the pre-existing distribution contracts between TRAVELHOST Magazine and those hotels/motels/distribution outlets.

21. Throughout the discussions with advertisers and hotels/motels in connection with the distribution and sale of advertising for TRAVELHOST Magazine, the Figg Defendants at all times held themselves out as representatives of TRAVELHOST. In connection with the activities herein complained of with respect to the Competitive Publication, the Figg Defendants dealt with those same advertisers and hotel/motel/distribution outlet representatives.

22.     In addition to violating the contractual non-compete commitments made to TRAVELHOST by publishing and distributing a South Central Indiana edition of the Competitive Publication, the Defendants have also published and distributed Spring and Summer 2010 issues of a North Central edition of TRAVELIN within the designated area of TRAVELHOST's former distributor, R & L Publications, Inc.  The President and owner of R & L Publications, Inc. is Ross Pethe.   The agreements between TRAVELHOST and that entity were not terminated until June 1, 2010, after they failed to cure a default for failure to publish and distribute the March 14, 2010, issue of the local North Central edition.  Ross Pethe has been listed as the associate publisher for the North Central edition of TRAVELIN from the date of commencement of distribution of that publication.  Many of the advertisers in that edition of the Competitive Publication are identical with those advertising in the North Central local edition of TRAVELHOST Magazine, as well, including, in a number of instances, the same advertisements.  That edition of the Competitive Publication also targets the same markets, readers and distribution channels as TRAVELHOST Magazine.  By reason of his direct involvement in the North Central edition of TRAVELIN, R & L Publishing, Inc. and Ross Pethe are acting in direct violation of their contractual obligations to TRAVELHOST.   On information and belief, Tonya Figg actively solicited their involvement in her Competitive Publication, and, with full knowledge of their contractual non-compete obligations to TRAVELHOST, intentionally induced their breach of those contractual obligations.

23.     Upon learning of the existence of the Competitive Publication, TRAVELHOST sent a cease and desist letter to the Defendants dated October 11, 2010,

demanding that the Defendants immediately cease any further involvement or activities in conjunction with that Competitive Publication, directly or indirectly. Defendants were put on notice that, absent their voluntary written confirmation of compliance with the cease and desist demand, TRAVELHOST would pursue appropriate legal remedies, including, *inter alia*, damages, injunctive relief, and recovery of attorneys' fees and court costs.

## V.    FIRST CLAIM FOR RELIEF:

## BREACH OF CONTRACT

24.    TRAVELHOST repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

25.    Defendants have violated the terms of paragraph 9 of the Distributorship Agreement, and continue to violate that Agreement, by actively competing, directly and indirectly, with TRAVELHOST by engaging in a similar business or one competitive with TRAVELHOST Magazine within the Designated Area encompassed by that Agreement.

26.    Defendant Figg Publishing, Inc. has further breached the Distributorship Agreement, and continues to breach the Agreement, by failing to purchase and accept delivery of the January 2010 quarterly issue of the local edition of TRAVELHOST Magazine, by not using its best efforts to distribute the local edition of TRAVELHOST Magazine within the Designated Area prior to termination of the Agreements on March 4, 2010, as well as by failing to seek to obtain and maintain advertisers for the local South Central Indiana edition of TRAVELHOST Magazine (rather actively soliciting advertisers away from TRAVELHOST Magazine and into the Competitive Publication).

27.     The aforementioned actions of Defendants have proximately caused damage to TRAVELHOST, including loss of goodwill, loss of income, loss of future earnings and profits, and other damages in an amount yet to be determined.

28.     As a result of the Defendants' breaches of the Distributorship Agreement, TRAVELHOST has found it necessary to bring this legal action.  In addition to damages, TRAVELHOST is entitled by contract to recovery of court costs and attorney's fees incurred pursuant to the provisions of paragraph 13.5 of the Distributorship Agreement, as well as pursuant to the provisions of Section 38.001(8) of the Texas Civil Practice and Remedies Code.

## VI. SECOND CLAIM FOR RELIEF:

## BREACH OF CONTRACT

29.     TRAVELHOST repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

30.     The covenant not to compete set forth in paragraph 9 of the Distributorship Agreement is enforceable inasmuch as:   a) it is ancillary to or part of an otherwise enforceable agreement;  to-wit, the Distributorship Agreement;  b) the two-year time limitation is reasonable;  c) the geographical area and scope of activity to be restrained are reasonable as corresponding precisely to the Defendants' Designated Area;  and d) the non-compete covenant does not impose any greater restraint than reasonably necessary to protect TRAVELHOST's goodwill and its business interests in the specific area of distribution of TRAVELHOST Magazine of South Central Indiana by Defendants. Accordingly, it should be enforced in accordance with the provisions of the Texas

Covenants Not To Compete Act, TEX. BUS. & COM. CODE ANN. § 15.50 et seq. (hereinafter "Act").

31.     The Defendants have clearly violated the covenant not to compete contained in paragraph 9 of the Distributorship Agreement, and have thereby breached the Agreement.  As a result, TRAVELHOST has and will continue to sustain irreparable damages arising from that violation in any amount presently indeterminable.  Among other things, Plaintiff is entitled to recover gross profits earned by Defendants from monies diverted to their use and benefit.  Plaintiff sues for recovery of all such funds and for disgorgement of any profits realized by Defendants.  In accordance with § 15.51(a) of the Act, TRAVELHOST is not only entitled to injunctive relief, but also to recovery of those damages resulting from Defendants' violations of the covenant, together with reasonable attorneys' fees and costs.

## VII. THIRD CLAIM FOR RELIEF:

## TORTIOUS INTERFERENCE

32.     TRAVELHOST repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

33.     Defendant, Tonya Figg, set out upon a deliberate course of action commencing in late 2009 or early 2010 to willfully and intentionally seek to interfere with TRAVELHOST's agreements and contractual relations between it and its local distributor for North Central Indiana (R & L Publications, Inc.) ("RLP").  In addition, Defendant Figg pursued a course of action intended to entice the current advertisers in and distribution outlets for the North Central Indiana and South Indiana local editions of

TRAVELHOST Magazine to discontinue their contractual relations with TRAVELHOST and to switch their relations to another publication.

34.     In furtherance of her course of action, Tonya Figg communicated with RLP and its President, Ross Pethe, recommending and encouraging them to fail to comply with their contractual obligations to TRAVELHOST, to cease doing business with TRAVELHOST, to breach their agreements with TRAVELHOST, and/or to commence active participation in the publishing and distribution within their designated area of the Competitive Publication TRAVELIN in direct violation of their contractual commitments with TRAVELHOST.     Defendant Figg also communicated with the existing advertisers in and distribution outlets for TRAVELHOST Magazine for the express purpose of inducing them to terminate all relations with TRAVELHOST Magazine and to switch their relations to TRAVELIN.

35.     At all times when engaging in the communications, Tonya Figg was fully aware of the fact that RLP was a party to agreements with TRAVELHOST, and she was further aware of the fact that engaging in the acts being recommended would constitute violations of the terms of those agreements by both RLP and Pethe.  She was also fully aware that each of the advertisers and distribution outlets had existing contractual relations with and commitments to TRAVELHOST Magazine.

36.     As a direct and proximate result of the foregoing acts of Tonya Figg, TRAVELHOST has suffered injury, including, but not limited to, the loss of advertisers and distributors for TRAVELHOST Magazine, as well a the breach by RLP of its agreements with TRAVELHOST in various ways (ceasing to send in production packets, failing to purchase and distribute the local edition of TRAVELHOST Magazine, cutting

off all communications with TRAVELHOST, and engaging in acts in violation of the non-compete obligations to TRAVELHOST). In addition, by reason of the breaches of the agreements by RLP, TRAVELHOST has been required to make extra efforts at attempting to locate a new distributor for the designated area. The damages and injury caused by Tonya Figg's acts are continuing in nature, and it is anticipated that TRAVELHOST will have difficulty in fully assessing and measuring the full extent of all of the damages and injuries caused to it.

37.     TRAVELHOST seeks recovery from the Defendant Tonya Figg of those damages sustained by it as a result of her acts, exemplary damages, all costs of court, and TRAVELHOST's reasonable attorney's fees.

## VIII. FOURTH CLAIM FOR RELIEF:

## REQUEST FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

38.     TRAVELHOST repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

39.     By reason of the conduct of Defendants in violation of the terms of paragraph 9 of the Distributorship Agreement, as well as Defendants tortious interference with TRAVELHOST business/contractual relations, TRAVELHOST has suffered substantial irreparable injury in an unascertainable amount.

40.     Unless enjoined by the Court, Defendants will continue to engage in the aforementioned course of action, and TRAVELHOST will suffer further irreparable injury and damages in an unascertainable amount, in that TRAVELHOST will lose a substantial amount of business and goodwill from hotels, advertisers and potential advertisers in said Designated Area. Defendants' misappropriation of advertisers for its

own benefit significantly harms the ability of TRAVELHOST and/or any other future distributor of TRAVELHOST Magazine in this market area to continue to obtain business from the advertisers and to continue to use the distribution channels set up and developed through use by Defendants of the goodwill and brand recognition of TRAVELHOST. The irreparable injury threatened to TRAVELHOST absent grant of a preliminary injunction is actual and imminent.

41.     Defendants' actions, if not enjoined, threaten to put TRAVELHOST out of business in the impacted market area, and, at a minimum, will significantly impair TRAVELHOST's ability to continue business in that market area either independently or through any other distributor.

42.     Granting injunctive relief will not harm Defendants or the public interest, as TRAVELHOST merely seeks to prevent and enjoin improper and contractually forbidden competition.   Granting injunctive relief will promote the public interest in preserving the integrity of contract and fair competition.

43.     TRAVELHOST has no adequate or speedy remedy at law for the conduct of Defendants, and this action for injunctive relief is TRAVELHOST's only means of obtaining timely and adequate relief.

## IX. FIFTH CLAIM FOR RELIEF:

### CONSTRUCTIVE TRUST

44.     TRAVELHOST repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

45.     Plaintiff is entitled to the equitable remedy of constructive trust, to be imposed by the Court upon all revenues received by Defendants for their actions in

violation of the Agreement set forth herein, from their use of proprietary and confidential information that they obtained from TRAVELHOST, and from their activities in contravention of the non-competition provisions of their Agreements.

## X. ACCOUNTING

46.     TRAVELHOST repeats and realleges each and every allegation in the foregoing paragraphs as if set forth herein.

47.     Plaintiff is entitled to a full and complete accounting from Defendants, reflecting any and all revenues received from (a) advertisers who initially bought advertisement in the TRAVELHOST publication and who now are advertising in Defendants' competitive publication; (b) revenues received by Defendants from the unauthorized use of any proprietary or confidential information furnished them by Plaintiff; and (c) any monies diverted from TRAVELHOST, whether or not received directly by Defendants.

## XI. ATTORNEYS FEES

48.     TRAVELHOST has found it necessary to employ the undersigned attorneys to prosecute this action and Plaintiff is therefore entitled to the recovery of reasonable and necessary attorneys fees incurred in connection with the claims asserted herein.

## PRAYER FOR RELIEF

WHEREFORE, TRAVELHOST, Inc. prays for judgment in its favor and against Tonya Figg and Figg Publishing, Inc. as follows:

A.      Issue preliminary injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure and § 15.51(a) of the Texas Covenants Not To Compete Act, upon motion, effectuation of service and proper notice, ordering the Defendants, as well as all others acting in concert or participation with them, to refrain immediately and pending the final hearing and determination of this Court from, among other things: (i) making any false or misleading statements about TRAVELHOST or TRAVELHOST Magazine to any person, including current and potential advertisers; (ii) soliciting advertisements from any past or potential future advertisers on behalf of the Competitive Publication; (iii) competing with TRAVELHOST or engaging in actions in competition with TRAVELHOST anywhere within the Designated Area; (iv) having any contact with any advertisers or potential advertisers in the Competitive Publication, directly or indirectly; (v) having any contact with any hotels/motels in the Designated Area for the purpose of seeking or obtaining in-room placement of the Competitive Publication or interfering with TRAVELHOST's relationship with said hotels/motels; (vi) having any involvement whatsoever, directly or indirectly, with the publishing, distribution, marketing, or promotion of the Competitive Publication, or any other similar publication in competition with TRAVELHOST within the Designated Area, for a period of a full two (2) years as provided in paragraph 9 of the Distributorship Agreement; or (vii) having any contact or communications of any kind or nature with any former or existing distributors of Plaintiff for any reason or purpose whatsoever, including, but not limited

to, any communications encouraging or seeking to induce any other distributor to either breach any contractual obligation to TRAVELHOST or to terminate its business or contractual relations with TRAVELHOST.

B.     Order and direct Defendants to turn over to TRAVELHOST a list of all advertisers, businesses, hotels, and/or motels contacted by them for or on behalf of the Competitive Publication prior to the date of the filing of this Complaint.

C.     Order and direct Defendants, and all those acting in combination or conspiracy with them, to turn over to TRAVELHOST a list of all distributors of TRAVELHOST who they have contacted or with whom they have communicated between the time-frame January 1, 2010 through the time of the filing of this Complaint.

C.     Upon final hearing, issue a permanent injunction enjoining and restraining Defendants, and all those in active concert or participation with them, from any of the conduct set forth in the above paragraph A for a period beginning on the day of entry of said order for a period of two (2) years following full cessation of those activities enjoined by the Court..

D.     Enter judgment in TRAVELHOST's favor and against Defendants for an award of actual damages proven, special damages, pre and post judgment interest at the maximum legal rate, and for TRAVELHOST's costs expended herein, including reasonable attorneys' fees, as permitted by the Distributorship Agreement and/or in accordance with Texas law.

E.      Award such other and further relief as is just and proper.

Respectfully submitted,

WINSTEAD PC
1201 Elm Street
5400 Renaissance Tower
Dallas, Texas 75270
214-745-5400
214-745-5390 (Facsimile)

Jay J. Madrid, Esq.          SB#12802000
jmadrid@winstead.com
Kristen L. Sherwin, Esq.     SB#24043918
ksherwin@winstead.com

ATTORNEYS FOR PLAINTIFF,
TRAVELHOST, INC.

John A. Price, Esq.      SB#16297700
10701 Stemmons Frwy
Dallas, Texas 75220
972-556-0541
972-432-8729 (Facsimile)

CO-COUNSEL FOR PLAINTIFF,
TRAVELHOST, INC.

ORIGINAL COMPLAINT       20

JS 44 (TXND Rev. 2/10)   ORIGINAL   **CIVIL COVER SHEET**   3-11CV-455-D

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Travelhost, Inc.

**DEFENDANTS**

Tonya Figg, Individually and Figg Publishing, Inc., a corporation

**(b)** County of Residence of First Listed Plaintiff   Dallas County, Texas
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Avon, Indiana 46123
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Jay J. Madrid, Winstead PC, 1201 Elm St.
Suite 5400, Dallas, Texas 75270; 214/745-5709

Attorneys (If Known)

MAR – 4 2011

CLERK, U.S. DISTRICT COURT

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC section 1332(a)
Brief description of cause:
Breach of Distributorship Agreement, including non-compete.

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

**VIII. RELATED CASE(S)** (See instructions)
**PENDING OR CLOSED:**
JUDGE _____   DOCKET NUMBER _____

DATE  3-4-2011

SIGNATURE OF ATTORNEY OF RECORD   Jay J Madrid

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____