IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRAVELHOST, INC., | § | |
| | § | |
|     Plaintiff-counterdefendant, | § | |
| | § | Civil Action No. 3:11-CV-0455-D |
| VS. | § | |
| | § | |
| TONYA FIGG, | § | |
| | § | |
|     Defendant-counterplaintiff. | § | |

MEMORANDUM OPINION
AND ORDER

A magazine publisher moves to preliminarily enjoin a former distributor from violating a covenant not to compete.[1]  Concluding that the plaintiff cannot establish a substantial threat of irreparable injury because the defendant is no longer competing with the plaintiff, and, if the defendant reenters the market, the plaintiff's injuries during the four months that at most remain under the period of non-competition are compensable in money damages, the court denies the motion.[2]

---

[1]This preliminary injunction motion is before the court under the procedure permitted by Fed. R. Civ. P. 43(c) and is being decided on the papers without an evidentiary hearing. *See, e.g., Wireless Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns* AB, 390 F.Supp.2d 532, 533 n.1 (N.D. Tex. 2005) (Fitzwater, J.) (addressing former Rule 43(e)), *aff'd*, 189 Fed. Appx. 965 (Fed. Cir. 2006).

[2]Pursuant to Rule 52(a), the court sets out its findings of fact and conclusions of law in this memorandum opinion and order.

I

Plaintiff-counterdefendant TRAVELHOST, Inc. ("Travelhost") is the publisher of *Travelhost* magazine, which is aimed toward providing traveler information and advertisements regarding restaurants, attractions, and entertainment. The magazine is distributed primarily through hotels and motels and, to a lesser extent, local visitors bureaus, kiosks in areas frequented by tourists, and similar venues.

In April 2008 Travelhost and former defendant Figg Publishing, Inc. ("Figg Publishing")[3] entered into a Distributorship Agreement ("Agreement") in which Travelhost agreed to produce the magazine and Figg Publishing agreed to use its best efforts to distribute the magazine and sell advertising within the designated area of the Bloomington/Columbus, Indiana metropolitan area. The Agreement granted Figg Publishing a license to use the Travelhost trademark and logo in connection with the promotion and distribution of the magazine. It also included the following non-competition clause:

> Distributor agrees that it will not, either directly or indirectly,
> engage or participate in a similar business or one competitive
> with Publisher, the Publication, any other authorized distributor
> of the Publication, or any other TRAVELHOST products within
> its Designated Area during the term of this Agreement or within
> two (2) years after termination of this Agreement.

P. App. 8. Defendant-counterplaintiff Tonya Figg ("Figg"), the president of Figg Publishing, agreed to be personally bound by the Agreement's non-competition clause. After the

---

[3]Figg Publishing is no longer a party. The court entered a default judgment against it on August 17, 2011.

Agreement was executed, Figg attended training classes hosted by Travelhost and allegedly received certain confidential and proprietary information.

After distributing and selling advertising for five quarterly issues, Travelhost and Figg terminated their relationship. Travelhost and Figg disagree about the precise ending date. Figg contends that she informed Travelhost on December 19, 2009 that she would no longer continue in business. Travelhost maintains that, after Figg Publishing failed to purchase and distribute the January 2010 edition of *Travelhost* and was notified of its default on February 15, 2010, it was Travelhost who sent a notice of termination on March 4, 2010.

Travelhost alleges that, in the Spring of 2010, Figg launched a competitor publication—*Travel Indiana*[4]—for the South Central region and, later, the North Central region. It contends that *Travel Indiana*'s South Central region encompasses Figg's designated area, and the North Central region encompasses the designated area of a prior Travelhost distributor who defaulted on its obligations and became an associate publisher of *Travel Indiana*. It also asserts that *Travel Indiana* targets the same readers, utilizes the same distribution points, and advertises many of the same businesses as the *Travelhost* magazine.

Figg essentially concedes her involvement with *Travel Indiana*, but she has introduced evidence that neither edition of *Travel Indiana* has been published since February 2011, and that she sold the business on October 3, 2011. According to Figg's evidence, she is now working in Indianapolis, which is outside her designated area.

---

[4]Travelhost calls the magazine "TRAVELIN," while Figg calls it "Travel Indiana."

II

Travelhost seeks a preliminary injunction enjoining Figg from breaching the non-competition clause.  To obtain a preliminary injunction, Travelhost must establish the following: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to it outweighs the threatened harm the injunction may do to Figg; and (4) that granting the preliminary injunction will not disserve the public interest.  *E.g., Jones v. Bush*, 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (Fitzwater, J.), *aff'd*, 244 F.3d 134 (5th Cir. 2000) (per curiam) (unpublished table decision).[5]  "A preliminary injunction is an extraordinary remedy.  It should only be granted if the movant has clearly carried the burden of persuasion on all four . . . prerequisites."  *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

---

[5]Although Figg recites the Texas state-law standard for deciding whether a temporary injunction is warranted, a federal court sitting in diversity applies the federal standard for determining whether a preliminary injunction should be granted.  *See, e.g., Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010) ("[F]ederal law governs the procedural question [of] when a preliminary injunction may issue[.]"); *TransPerfect Translations, Inc. v. Leslie*, 594 F.Supp.2d 742, 748 (S.D. Tex. 2009) (after noting that court had diversity jurisdiction, stating Fifth Circuit preliminary injunction standard).  Pursuant to the choice-of-law provision in the Agreement, the court will refer to Texas law, including the Covenants Not to Compete Act, Tex. Bus. & Com. Code Ann. § 15.50 *et. seq.* (West 2009), in deciding substantive matters.  *See, e.g., Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997) ("To determine the likelihood of success on the merits, we look to the standards provided by the substantive law."); *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990) (same).

III

The dispositive question presented by Travelhost's motion is whether it has established a substantial threat of irreparable injury.

A

Before addressing whether Travelhost has made the required showing, the court will address three preliminary questions.

1

Travelhost contends that, because § 15.50 of the Covenants Not to Compete Act, Tex. Bus. & Com. Code Ann. § 15.50 *et. seq.* (West 2009) (the "Act"), does not require a showing of irreparable injury and § 15.52 provides that the Act preempts common law, the court need not address the second factor of the injunction test.  Travelhost cites cases from one Texas court of appeals and another case, *Norlyn Enterprises, Inc. v. APDP, Inc.*, 95 S.W.3d 578, 585 (Tex. App. 2002, no pet.).  This contention is misplaced.  First, the court must use the federal standard for preliminary injunctions.  *See supra* note 5.  Second, even if Texas law governs, it is unclear in this respect.  *Cf. TransPerfect Translations, Inc. v. Leslie*, 594 F.Supp.2d 742, 757 n.7 (S.D. Tex. 2009) ("The Texas non-compete statute does not preempt the common law requirements for establishing a temporary injunction.").

As Travelhost acknowledges, in *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230 (Tex. App. 2003, no pet.), the Texas court of appeals that decided *Norlyn* held that "the Act does not preempt the equitable principles, including the need to show irreparable injury for which legal remedy is inadequate, for obtaining temporary-injunctive

relief," and "overrule[d] *Norlyn* to the extent that it [held] otherwise." *Id.* at 241.  Other

courts have similarly decided this question.  *See, e.g., EMSL Analytical, Inc. v. Younker*, 154

S.W.3d 693, 695 (Tex. App. 2004, no pet.) ("We agree with the First and Ninth Courts of

Appeals, in holding that the Act does not preempt the common law relating to *temporary*

injunctions.") (emphasis in original); *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 293

n.1 (Tex. App. 2004, no pet.) (declining to revisit *NMTC Corp. v. Conarroe*, 99 S.W.3d 865,

868 (Tex. App. 2003, no pet.), which found no error in applying common law requirements

for temporary injunction involving covenant not to compete).  And although one court of

appeals has held that the Act supersedes the common law requirements, *see Hilb, Rogal &*

*Hamilton Co. v. Wurzman*, 861 S.W.2d 30, 33 (Tex. App. 1993, no writ), it is unclear how

that court would rule on this issue now, in light of decisions such as *Cardinal Health*.  *See*

*Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 619 (Tex. App. 2004, no pet.) (including

requirement of showing irreparable injury in Texas standard for temporary injunction even

though court was considering covenant not to compete under § 15.50 of the Act); *C.S.C.S.,*

*Inc. v. Carter*, 129 S.W.3d 584, 588 n.1 (Tex. App. 2003, no pet.) (declining to address effect

of *Cardinal Health* on the court's precedents).

       The court therefore declines to eliminate the second element of the federal four-part

preliminary injunction test based on § 15.50 of the Act.

2

Travelhost also contends that irreparable injury should be presumed in this case because § 15.51 explicitly permits a court to award injunctive relief.  It cites *League of United Latin American Citizens v. Pasadena Independent School District*, 662 F. Supp. 443 (S.D. Tex. 1987) ("*LULAC*"), in which the court held that, "[w]hen an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose." *Id.* at 449 (quoting *Donovan v. Brown Equip. & Serv. Tools, Inc.*, 666 F.2d 148, 157 (5th Cir. 1982)).  "In other words, when a statute authorizes injunctive relief and the statutory conditions have been met, the requirement of irreparable injury will be presumed." *Id.* (citing *United States v. Hayes Int'l Corp.*, 415 F.2d 1038, 1045 (5th Cir. 1969)).  Travelhost's reliance on *LULAC* and the cases it cites is misplaced.

*Donovan*, one of the cited cases, was a suit brought by the Secretary of Labor under Fair Labor Standards Act ("FLSA").  *See LULAC*, 662 F. Supp. at 449; *Donovan*, 666 F.2d at 151.  *Donovan*, in turn, also cites cases brought by government officials under regulatory-type statutes.  *See id.* at 157 (citing *Shultz v. Parke*, 413 F.2d 1364, 1368-70 (5th Cir. 1969) (action brought by Secretary of Labor under FLSA), and *Wirtz v. B. B. Saxon Co.*, 365 F.2d 457, 462-63 (5th Cir. 1966) (same)).  *LULAC* also refers to *Hayes International*, which was also a regulatory-type action brought by the Attorney General of the United States alleging race discrimination, in violation of Title VII of the Civil Rights Act of 1964.  *See LULAC*, 662 F. Supp. at 449; *Hayes Int'l*, 415 F.2d at 1039-40.

Because Travelhost is not a government agency or official and is not prosecuting a regulatory action of the type at issue in the cases on which *LULAC* relies, the court concludes that Travelhost has failed to show that irreparable injury should be presumed.[6]

3

Travelhost also relies on two Texas cases that hold that "[p]roof of a continued breach of a non-competition agreement by a highly trained employee constitutes prima facie proof of probable injury." *See Martin v. Linen Sys. for Hosps., Inc.*, 671 S.W.2d 706, 709 (Tex. App. 1984, no writ); *see also, e.g., Unitel Corp. v. Decker*, 731 S.W.2d 636, 641 (Tex. App. 1987, no writ); *Hartwell's Office World, Inc. v. Systex Corp.*, 598 S.W.2d 636, 639 (Tex. Civ. App. 1980, writ ref'd n.r.e.).  But this is a rebuttable presumption. *See Cardinal Health*, 106 S.W.3d at 236; *Hartwell's Office World*, 598 S.W.2d at 639 (noting that defendants had not rebutted evidence in support of presumption).  For this presumption to apply, the losses must be difficult to quantify. *See Criterion Brock, Inc. v. Aguirre*, 2011 WL 2517319, at *4 (S.D. Tex. June 23, 2011).  Travelhost has failed to demonstrate that it is entitled to this presumption because, as the court explains below, Travelhost has not proved that Figg is continuing to breach the Agreement, and the record supports the finding that its losses are measurable and compensable in money damages.

---

[6]Moreover, if Travelhost were correct, it is unclear why Texas courts would struggle with the question whether equitable principles must be satisfied when injunctive relief is sought under § 15.51 rather than, for example, simply concluding that irreparable injury should be presumed where all other statutory conditions have been met.

B

Having addressed the preliminary questions, the court now turns to whether Travelhost has made the required showing of a substantial threat of irreparable injury.

To meet this burden, Travelhost must demonstrate "a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986) (citations omitted); *see also, e.g., Criterion Brock*, 2011 WL 2517319, at *3 ("Irreparable harm requires a showing that: (1) the harm to plaintiff is imminent; (2) the injury would be irreparable; and (3) that plaintiff has no other adequate legal remedy.") (citing *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975)). "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (citing *Carter v. Heard*, 593 F.2d 10, 12 (5th Cir. 1979)). Clearly demonstrating irreparable harm is a heavy burden to overcome. *See, e.g., Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

Even assuming *arguendo* that a presumption of irreparable harm applies, *see supra* § III(A)(3), the court finds that the presumption has been rebutted in this case, and that Travelhost has failed to prove that it will suffer a substantial threat of irreparable injury if an injunction is not issued. Figg has produced evidence that she sold the *Travel Indiana*

business and is now working outside of the Agreement's designated area.[7] This evidence is

sufficient for the court to reject a finding of substantial threat of irreparable injury. *See, e.g.,*

*Legend Airlines, Inc. v. Legend Tours, Inc.*, 2001 WL 1112429, at *2 (N.D. Tex. Sept. 14,

2001) (Fitzwater, J.) (holding that plaintiff failed to demonstrate substantial threat of

irreparable injury due to confusion of trademarks because defendant had exited market and

was undergoing liquidation); *Barrow v. Greenville Indep. Sch. Dist.*, 2001 WL 912643, at

*1 (N.D. Tex. Aug. 9, 2001) (Fitzwater, J.) (finding that although plaintiff might have been

victim of past discrimination, she failed to demonstrate irreparable injury without showing

that defendant's current policy would discriminate against her).

And even if Figg were now to reenter the market, there are, at most, only four months

---

[7]Travelhost objects to this evidence, contending that it is unsupported by specific citations to the appendix, as N.D. Tex. Civ. R. 7.2(e) requires. Travelhost also maintains that the evidence found in Figg's purported "affidavit" is inadmissible because the affidavit has not been notarized, is unsworn, and contains statements as to which Figg lacks personal knowledge or are hearsay. Although Travelhost is correct that Figg has failed to comply with Rule 7.2(e), this deficiency has not interfered with the decisional process of the court and Figg is proceeding *pro se*. The court overrules Travelhost's objections to Figg's affidavit. *See, e.g., Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."); *Petrello v. Nath*, 350 Fed. Appx. 887, 891 (5th Cir. 2009) (holding that, in deciding preliminary injunction, "the district court may employ informal procedures and rely on generally inadmissible evidence") (quoting *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993)); *Half Price Books, Records, Magazines, Inc. v. Barnesandnoble.com, LLC*, 2003 WL 23175432, at *1 (N.D. Tex. Aug. 15, 2003) (Fish, C.J.) ("The law is well-settled that because the procedures governing a preliminary injunction are generally less formal than those at trial, the court may rely upon otherwise inadmissible evidence when considering a preliminary injunction.").

remaining until the non-competition clause of the Agreement expires.[8]  If Travelhost were

to suffer monetary damages arising from Figg's actions during these few remaining months,

Travelhost can calculate its money damages.  Just as Travelhost has identified in its motion

the advertisements shared by both *Travelhost* and *Travel Indiana*, it will not be difficult for

Travelhost to do so for the purpose of proving further breaches.  *See Criterion Brock*, 2011

WL 2517319, at *4 (concluding that monetary damages would not be difficult to calculate

and that damages would be adequate remedy because plaintiff demonstrated that it could

"track" clients solicited by defendants while employed at competing company); *M-I, L.L.C.*

*v. Stelly*, 2009 WL 2355498, at *6 (S.D. Tex. July 30, 2009) (finding that plaintiff was

capable of calculating damages because it had tracked the revenue it lost to competing

company and, despite alleged volatility that would make future losses difficult to calculate,

trier of fact could make this determination).  And to the extent Travelhost's goodwill is

injured during this limited period (again, assuming Figg even reenters the market), this injury

is compensable in money damages due to the length of the period.  *Cf., e.g., DFW Metro Line*

*Servs. v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990) (per curiam) (holding in case

where plaintiff had only been in the business for 1½ years at the time suit was filed that

"[t]he lost goodwill of a business operated over a short period of time is usually compensable

---

[8]As noted above, the parties dispute the date their relationship under the Agreement terminated.  Even if the court assumes that the correct date is March 4, 2010—the latest date on which Travelhost relies—the non-competition clause of the Agreement provides that it expires two years later, i.e., on March 4, 2012.  This date is fewer than four months from the date this memorandum opinion and order is being filed.

in money damages"); *GTE Card Servs., Inc. v. AT & T Corp.*, 1997 WL 74712, \*3  (N.D.

Tex. Feb. 12, 1997) (Fitzwater, J.) (holding that plaintiff did not establish irreparable injury

to its goodwill under *DFW Metro Line Services* because its long distance service was not yet

one year old).[9]

IV

Because a preliminary injunction should be granted only if the movant has clearly

carried the burden of persuasion on all four factors, *see Mississippi Power & Light*, 760 F.2d

at 621, and because Travelhost has failed to carry its burden of proving a substantial threat

of irreparable injury, the court need not address the remaining three factors.  *See DFW Metro*

*Line Servs.*, 901 F.2d at 1269 (affirming denial of preliminary injunctive relief on ground that

movant had failed to show irreparable injury, and pretermitting discussion of other three

factors).[10]

---

[9]Travelhost has not established that it is currently suffering damage to its reputation
or goodwill.  It is not presently competing in the designated area, and it merely speculates
that it "may be impossible" to locate a new distributor and that it "is faced with [this]
daunting task."  *See* P. App. 31; *see also Snelling & Snelling, Inc. v. Ryvis, Inc.*, 1999 WL
1032799, at \*2 (N.D. Tex. Nov. 10, 1999) (Fitzwater, J.) (finding that franchisor did not
demonstrate substantial threat of irreparable injury because it was neither currently
competing in markets in question nor expressed intent to enter these markets).

[10]Other decisions of this court are not to the contrary because they are factually
distinguishable.  Travelhost relies on this court's conclusion in *Ruscitto v. Merrill Lynch,
Pierce, Fenner & Smith, Inc.*, 777 F. Supp. 1349 (N.D. Tex. 1991) (Fitzwater, J.), that,
"[u]nder Texas law, covenants not to compete present the paradigm of irreparable injury, so
that reasonable enforcement appears to be the rule rather than the exception."  *Id.* at 1354
(citing Tex. Bus. & Com. Code Ann. § 15.51(a) (West 1991)); *see also, e.g., A & A Global
Indus., Inc. v. Wolfe*, 2001 WL 1388020, at \*5 (N.D. Tex. Nov. 6, 2001) (Fitzwater, J.) ("In
Texas, injury resulting from the breach of non-compete covenants is the epitome of

\*   \*   \*

For the reasons explained, the court denies Travelhost's motion for preliminary injunction.

**SO ORDERED.**

November 22, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

irreparable injury."); *Amerispec, Inc. v. Metro Inspection Servs., Inc.*, 2001 WL 770999, at
\*6 (N.D. Tex. July 3, 2001) (Fitzwater, J.) (same); *Am. Express Fin. Advisors, Inc. v. Scott*,
955 F. Supp. 688, 693 (N.D. Tex. 1996) (Solis, J.) (same).  But so far as the court is aware,
these cases did not involve parties, like Figg, who were no longer conducting business within
the geographical area and time frame covered by a covenant not to compete and who were
also unlikely to do so during the remaining short period when the non-compete clause was
in effect.  *Cf., e.g., Ruscitto*, 777 F. Supp. at 1351 (addressing case where promisee to non-
competition clause went to work immediately for competitor after resigning); *A & A Global
Indus.*, 2001 WL 1388020, at \*4 (concluding that plaintiff's evidence strongly indicated that
defendant had been competing with plaintiff); *Amerispec*, 2001 WL 770999, at \*2 (noting
that plaintiff alleged that defendants, through their corporation, were providing a competing
service); *Am. Express*, 955 F. Supp. at 690 (noting that defendant sent letter to plaintiff's
customers stating that he was changing to competing company).